# EXHIBIT A



**U.S. Department of Justice**

Criminal Division

---

*Assistant Attorney General*                                    *Washington D C   20530*

November 19,,2010

LIMITED OFFICIAL USE

## MEMORANDUM

TO:                      Harley G Lappin
                         Director
                         Federal Bureau of Prisons

FROM:                    Lanny A. Breuer
                         Assistant Attorney General

SUBJECT:                 Extension of Special Administrative Measures Pursuant to
                         28 C.F.R § 501.3 for Federal Bureau of Prisons
                         Inmate Ramzi Ahmed Yousef

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                              Page 2
Pursuant to 28 C F R. § 501 3
Inmate - Yousef

1.    **General Provisions:**

    a.    **Adherence to Usual United States Marshals Service (USMS), BOP and Detention Facility (DF) Policy Requirements** - In addition to the below-listed SAM, the inmate must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc. If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM is more restrictive than usual USMS/BOP/DF policies, then the SAM shall control. If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                    Page 3
Pursuant to 28 C F R. § 501.3
Inmate - Yousef

b.   **Interim SAM Modification Authority** - During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify the inmate's SAM as long as any SAM modification authorized by OEO:

   i.    Does not create a more restrictive SAM

   ii.   Is not in conflict with the request of the U.S Attorney for the Southern District of New York (USA/SDNY), Federal Bureau of Investigation (FBI), or USMS/BOP/DF, or applicable regulations.

   iii.  Is not objected to by the USA/SDNY, FBI, or USMS/BOP/DF

c.   **Inmate Communications Prohibitions** - The inmate is limited, within USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written or recorded communications) with any other inmate, visitor, attorney, or anyone else, except as outlined and allowed by this document, that could reasonably foreseeably result in the inmate's communicating information (sending or receiving) that could circumvent the SAM's intent of significantly limiting the inmate's ability to communicate (send or receive) terrorism-related information.

   i.    The USMS/BOP/DF may permit the inmate to communicate with other SAM inmates orally only during certain predesignated times, the place and duration to be set by the USMS/BOP/DF. The inmate shall not have any physical contact with other inmates during this predesignated time and all such predesignated sessions will be monitored and/or recorded. Upon request of the FBI, a copy of the recordings will be provided by the USMS/BOP/DF to the FBI to be analyzed for indications that the inmates are attempting to pass messages soliciting or encouraging acts of terrorism, violence or other crimes

d.   **Use of Interpreters/Translators by USMS/BOP/DF** - Interpreter/translator (Interpreter) approval requirement:

   i.    USMS/BOP/DF may use Department of Justice (DOJ)-approved interpreters as necessary for the purpose of facilitating communication with the inmate.

   ii.   No person shall act as a interpreter without prior written clearance/approval from USMS/BOP/DF, which shall only be granted after consultation with the FBI and USA/SDNY

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)                         Page 4
Pursuant to 28 C F R. § 501 3
Inmate - Yousef

      iii        Interpreters utilized by USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with the inmate. Interpreters shall not be alone with the inmate, either in a room or on a telephone or other communications medium

2.      **Attorney/Client Provisions:**

    a      **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document -** The inmate's attorney (or counsel) – individually by each if more than one (1) – must sign an affirmation acknowledging receipt of the SAM restrictions document By signing the affirmation, the attorney acknowledges his/her awareness and understanding of the SAM provisions and his/her agreement to abide by these provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, the inmate's attorney, and pre-cleared staff, acknowledge the restriction that they will not forward third-party messages to or from the inmate

        i        The USA/SDNY shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to the inmate's attorney.

---

[1] The term "attorney" refers to the inmate's attorney of record, who has been verified and documented by the USA/SDNY, and who has received and acknowledged receipt of the SAM restrictions document As used in this document, "attorney" also refers to more than one (1) attorney where the inmate is represented by two (2) or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his/her individual capacity In addition, the inmate is currently a named defendant in one (1) or more civil lawsuits, some of which are part of the multidistrict litigation, *In Re. Terrorist Attacks on September 11, 2001,* 03 MD 1570 (RCC), currently pending in the Southern District of New York, and which have been brought by September 11 victims and families and by various insurance companies against numerous alleged terrorists and terrorism sponsors. The inmate is also a potential defendant in as yet unknown lawsuits arising out of his terrorist activities Therefore, for purposes of this document, the term "attorney" also includes the inmate's attorney of record in the civil lawsuit(s), who has been verified and documented by the USA/SDNY, and who has received and acknowledged receipt of the SAM restrictions document As used in this document, "attorney" also refers to more than one (1) attorney where the inmate is represented in one (1) of the above-described civil lawsuits by two (2) or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his/her individual capacity.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                     Page 5

Pursuant to 28 C.F.R. § 501.3
Inmate - Yousef

      ii.    After initiation of SAM and prior to the inmate's attorney being permitted to have attorney/client privileged contact with the inmate, the inmate's attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/SDNY.

      iii    The USA/SDNY shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C., and the USMS/BOP/DF.

  b.    **Attorney Use of Interpreters/Translators -**

      i.    Necessity Requirement - No interpreter/translator (interpreter) shall be utilized unless absolutely necessary where the inmate does not speak a common language with the attorney. Any interpreter shall be precleared.[2]

      ii    Attorney Immediate Presence Requirement - Any use of an interpreter by the attorney shall be in the physical and immediate presence of the attorney in the same room. The attorney shall not patch through telephone calls, or any other communications, to or from the inmate

      iii.    Translation of Inmate's Correspondence - An attorney of record may only allow a federally-approved translator to translate the inmate's correspondence as necessary for attorney/client privileged communication.

  c.    **Attorney/Client Privileged Visits** - Attorney/client privileged visits may be contact or non-contact, at the discretion of the USMS/BOP/DF

  d.    **Attorney May Disseminate Inmate Conversations** - The inmate's attorney may disseminate the contents of the inmate's communication to third parties for the sole purpose of providing necessary legal services related to the inmate's post-conviction proceedings -- and not for any other reason -- on the understanding that any such dissemination shall be made solely by the inmate's attorney, and not by the attorney's staff.

---

[2] "Precleared" refers to an interpreter/translator, who is actively assisting the inmate's attorney with the inmate's post-sentencing proceedings, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed -- as evidenced by his/her signature -- to adhere to the SAM restrictions and requirements.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                              Page 6
Pursuant to 28 C F R. § 501.3
Inmate - Yousef

e. **Unaccompanied Attorney's Pre-cleared Paralegal(s)[3] May Meet With Client -** The inmate's attorney's pre-cleared paralegal(s) may meet with the inmate without the necessity of the inmate's attorney being present  An investigator or interpreter/translator may not meet alone with the inmate. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF

f **Simultaneous Multiple Legal Visitors -** The inmate may have multiple legal visitors provided that at least one (1) of the multiple legal visitors consists of the inmate's attorney or pre-cleared paralegal  These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF

g **Legally Privileged Telephone Calls -** The following rules refer to all legally-privileged telephone calls or communications:

i. Inmate's Attorney's Pre-cleared Staff May Participate in Inmate Telephone Calls - The inmate's attorney's pre-cleared staff are permitted to communicate directly with the inmate by telephone, provided that the inmate's attorney is physically present and participating in the legal call as well.

ii Inmate's Initiation of Legally Privileged Telephone Calls - Inmate-initiated telephone communications with his attorney or pre-cleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to the inmate only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is the inmate's attorney. This privilege is contingent upon the following additional restrictions:

(1) The inmate's attorney will not allow any nonpre-cleared person to communicate with the inmate, or to take part in and/or listen to or overhear any communications with the inmate.

---

[3] "Precleared" when used with regard to an attorney's staff, or "pre-cleared staff member," refers to a co-counsel , paralegal, or an investigator, who is actively assisting the inmate's attorney with the inmate's post-sentencing proceedings, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed – as evidence by his/her signature – to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one (1) staff member, and the provisions of this document shall be fully applicable to each such staff member in his/her individual capacity A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                          Page 7
Pursuant to 28 C.F.R. § 501.3
Inmate - Yousef

(2)     The inmate's attorney must instruct his/her staff that:

(a)     The inmate's attorney and pre-cleared staff are the only persons allowed to engage in communications with the inmate

(b)     The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send the inmate's communications through third parties.

(3)     No telephone call/communication, or portion thereof, except as specifically authorized by this document:

(a)     Is to be overheard by a third party.[4]

(b)     Will be patched through, or in any manner forwarded or transmitted to a third party

(c)     Shall be divulged in any manner to a third party, except as otherwise provided in Section 2d above.

(d)     Shall be in any manner recorded or preserved[5]  The inmate's attorney may make written notes of attorney/client privileged communications.

(4)     If USMS/BOP/DF/FBI, or USA/SDNY determines that the inmate has used or is using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, the inmate's ability to contact his attorney by telephone may be suspended or eliminated.

h     **Documents Provided by Attorney to Inmate** - During a visit, the inmate's attorney may provide the inmate with, or review with the inmate, documents

---

[4]  For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when monitoring in connection with their official duties. This section does not allow monitoring of attorney/client privileged communications.

[5]  Except by USMS/BOP/DF/FBI/DOJ or other duly authorized federal authorities. This section does not allow monitoring of attorney/client privileged communications

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                          Page 8

Pursuant to 28 C.F.R. § 501.3
Inmate - Yousef

related to the inmate's criminal post-sentencing proceedings and/or material prepared by the inmate's attorney related to such proceedings. Any documents not related to the inmate's criminal post-sentencing proceedings must be sent to the inmate in the mail and will be subject to the mail review provisions of subparagraphs 2(i) and 3(g). Documents previously reviewed and cleared for receipt by the inmate, and already in the inmate's possession at the outset of the visit, may be discussed or reviewed by the inmate and the inmate's attorney during the visit.

i.     None of the materials provided may include inflammatory materials, materials inciting violence or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/SDNY and the FBI.

ii     The USA/SDNY may authorize additional documents to be presented to the inmate. If any document not listed or described above needs to be transmitted to the inmate, consent for the transmission of the document can be obtained from the USA/SDNY without the need to formally seek approval for an amendment to the SAM

i.     **Legal Mail**[6] - The inmate's attorney may not send, communicate, distribute, or divulge the inmate's mail, or any portion of its contents (legal or otherwise), to third parties

In signing the SAM acknowledgment document, the inmate's attorney and pre-cleared staff will acknowledge the restriction that only inmate case-related documents will be presented to the inmate, and that neither the attorney nor his staff will forward third-party mail to or from the inmate.

---

[6] Legal mail is defined as properly marked correspondence addressed to or from the inmate's attorney. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail." For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when monitoring in connection with their official duties.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                    Page 9
Pursuant to 28 C.F.R. § 501.3
Inmate - Yousef


3.    **Inmate's Non-legal Contacts:**

    a.    **Non-legal Telephone Contacts -**

        i.    The inmate is limited to non-legal telephone calls only to his immediate family members.[7]

        ii.    The quantity and duration of the inmate's non-legal telephone calls with his immediate family members shall be set by the USMS/BOP/DF, with a minimum of one (1) call per month.

    b.    **Rules for Telephone Calls** - For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

        i.    Is to be overheard by a third party.[8]

        ii.    Is to be patched through, or in any manner forwarded or transmitted, to a third party.

        iii.    Shall be divulged in any manner to a third party.

        iv.    Shall be in any manner recorded or preserved.[9]

        All telephone calls shall be in English unless a fluent FBI/USMS/BOP/DF-approved interpreter is available to contemporaneously monitor the telephone call. Arranging for an interpreter may require at least fourteen (14) days advance notice.

    c.    **Telephone SAM Restriction Notifications** - For all non-legal telephone calls to the inmate's immediate family member(s):

---

[7] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF/FBI-verifiable) spouse, children, parents, and siblings. Requests for additional non-legal contacts may be submitted and will be considered on a case-by-case basis.

[8] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when monitoring in connection with their official duties.

[9] Except by USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                          Page 10
Pursuant to 28 C.F.R. § 501.3
Inmate - Yousef

i        USMS/BOP/DF shall inform the inmate of the telephone SAM restrictions prior to each telephone call.

ii.      USMS/BOP/DF shall verbally inform the inmate's immediate family member(s) on the opposite end of the inmate's telephone communication of the SAM restrictions. USMS/BOP/DF is only required to notify the inmate's communication recipient in English.

iii.     USMS/BOP/DF shall document each such telephone notification

d.    **Family Call Monitoring** - All calls with the inmate's immediate family member(s) shall be:

      i.      Contemporaneously monitored by the FBI.

      ii.     Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

      iii     A copy of each inmate/immediate family member telephone call recording shall be provided by USMS/BOP/DF on a single, individual cassette tape or compact disk (per call) for forwarding to the FBI. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

e.    **Improper Communications** - If telephone call monitoring or analysis reveals that any call or portion of a call involving the inmate contains any indication of a discussion of illegal activity, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the inmate shall not be permitted any further calls to his immediate family members for a period of time to be determined by USMS/BOP/DF. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

f.    **Non-legal Visits** -

      i      **Limited Visitors** - The inmate shall be permitted to visit only with his immediate family members. The visitor's identity and family member relationship to the inmate will be confirmed by the USMS/BOP/DF and FBI in advance

      ii     **English Requirement** - All communications during non-legal inmate visits will be in English unless a fluent FBI or USMS/BOP/DF-approved

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                    Page 11
Pursuant to 28 C.F.R. § 501.3
Inmate - Yousef

interpreter is readily available to contemporaneously monitor the communication/visit.

iii.    **Visit Criteria** - All non-legal visits shall be:

(1)    Contemporaneously monitored by USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM

(2)    Permitted only with a minimum of fourteen (14) calendar days advance written notice to the USMS/BOP/DF facility where the inmate is housed.

(3)    Without any physical contact. All such meetings shall be non-contact to protect against harm to visitors or staff.

(4)    Limited to one (1) adult visitor at a time. However, FBI-verified children of the inmate may visit with a pre-approved adult visitor.

g    **Non-legal Mail** - Non-legal mail is any mail not clearly and properly addressed to/from the inmate's attorney and marked "Legal Mail" (incoming or outgoing). Non-legal mail is limited to only the inmate's immediate family, U.S. courts, federal judges, U.S. Attorney's Offices, members of U.S. Congress, BOP, or other federal law enforcement entities.

i.    **General correspondence with limitations:** Correspondence is restricted to immediate family members. Volume and frequency of outgoing general correspondence with immediate family members may be limited to three pieces of paper (not larger than 8 ½" x 11"), double-sided, once per calendar week to a single recipient, at the discretion of the USMS/BOP/DF. The identity and family member relationship to the inmate will be confirmed by USMS/BOP/DF and FBI.

ii.    **General correspondence without limitations:** There is no volume or frequency limitation on correspondence to/from U.S. courts, federal judges, U.S. Attorney's Offices, members of U.S. Congress, BOP, and other federal law enforcement entities, unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing to protect the security, good order or

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                    Page 12

Pursuant to 28 C.F.R. § 501.3
Inmate - Yousef

discipline of the institution, the public or national security may be jeopardized.

iii    All non-legal mail will be:

    (1)    **Copied** - Shall be copied (including the surface of the envelope) by the warden, or his/her designee, of the facility in which the inmate is housed

    (2)    **Forwarded** - Shall be forwarded, in copy form, to the location designated by the FBI

    (3)    **Analyzed** - After government analysis and approval, if appropriate, the inmate's incoming/outgoing non-legal mail will be forwarded to the USMS/BOP/DF for delivery to the inmate (incoming); or directly to the addressee (outgoing)

The federal government will forward the inmate's non-legal mail to the USMS/BOP/DF for delivery to the inmate or directly to the addressee after a review and analysis period of:

        (a)    A reasonable time not to exceed fourteen (14) business days for mail which is written entirely in the English language.

        (b)    A reasonable time not to exceed sixty (60) business days for any mail which includes writing in any language other than English, to allow for translation.

        (c)    A reasonable time not to exceed sixty (60) business days for any mail where the Federal Government has reasonable suspicion to believe that a code was used, to allow for decoding

iv    **Mail Seizure** - If outgoing/incoming mail is determined by USMS/BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the FBI for appropriate action. The inmate shall be notified in writing of the seizure of any mail.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                        Page 13
Pursuant to 28 C F R  § 501.3
Inmate - Yousef

4.    **Communication With News Media:**

The inmate will not be permitted to talk with, meet with, correspond with, or otherwise communicate with any member or representative of the news media, in person, by telephone, by furnishing a recorded message, through the mail, through his attorney, through a third party, or otherwise.

5.    **Religious Visitation:**

a.    The inmate shall not be allowed to engage in group prayer with other inmates

b.    If an FBI and/or USMS/BOP/DF-approved religious representative is to be present for prayer with the inmate, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF

6.    **No Communal Cells and No Communication Between Cells:**

a     The inmate shall not be allowed to share a cell with another inmate

b     The inmate shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates.

7.    **Cellblock Procedures:**

a     The inmate shall be kept separated from other inmates as much as possible while in the cellblock area

b     The inmate shall be limited, within USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

8     **Commissary Privileges:**

The USMS/BOP/DF shall restrict access to commissary items or any other objects determined by USMS/BOP/DF to be capable of being converted into dangerous instruments

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                    Page 14
Pursuant to 28 C.F.R. § 501.3
Inmate · Yousef

9     **Access to Mass Communications:**

To prevent the inmate from receiving and acting upon critically-timed information or information coded in a potentially undetectable manner, the inmate's access to materials of mass communication is restricted as follows:

a     **Publications/Newspapers -**

   i.     The inmate may have access to publications determined not to facilitate criminal activity or be detrimental to: national security; the security, good order or discipline of the institution; or the protection of the public. This determination is to be made by the BOP, in consultation with the USA/SDNY.

   ii     Sections of the publication/newspaper which offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to classified advertisements and letters to the editor, should be removed from the publications/newspapers prior to distribution to the inmate.

   iii.   If restricted by BOP rules, a publication will be denied. If acceptable, upon delivery, the BOP will review the publication and make the initial determination. If the FBI's expertise on national security or intelligence matters is required, the publication will be forwarded to the FBI for review. The BOP will also forward the publication to the FBI if translations are needed to make that determination. (In these cases, the FBI shall respond to the BOP within fourteen (14) business days.) The inmate shall then have access to the remaining portions of the publications/newspapers deemed acceptable, in accordance with USMS/BOP/DF policy.

   iv.    In order to avoid passing messages/information from inmate to inmate, the inmate shall be allowed to share institutionally-purchased publications/newspapers with other SAM inmates only after each publication/newspaper is physically screened by staff to ensure that messages cannot be passed between the SAM inmates. Publications/newspapers individually purchased by the inmate may not be shared with any other inmate.

b     **Television and Radio -** The inmate is authorized to have television and radio viewing and listening privileges, in accordance with standard and applicable USMS/BOP/DF policies and procedures.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                              Page 15

Pursuant to 28 C.F.R. § 501.3
Inmate - Yousef

        c      **Termination or Limitation** - If the USMS/BOP/DF determines that the mass
communications are being used as a vehicle to send messages to the inmate
relating to the furtherance of terrorist activities, the inmate's access may be limited
or terminated for a period of time to be determined by the USMS/BOP/DF

10.    **Access to Books:**

The inmate may have access to all books which do not facilitate criminal activity or
present a substantial threat to national security or the security, discipline, or good order of
the institution. This initial determination is to be made by the BOP and, if the BOP
determines that the FBI's expertise on national security or intelligence matters is required,
the book(s) will be forwarded to the FBI for review. In conducting its analysis, the FBI
will determine whether the book advocates or promotes acts of terrorism or violence
and/or whether access to the book by this particular inmate would pose a substantial threat
to national security

In order to avoid passing messages/information from inmate to inmate, the inmate shall be
allowed to share institutionally-purchased books with other SAM inmates only after each
book is physically screened by staff to ensure that messages cannot be passed between the
SAM inmates. Books individually purchased by the inmate may not be shared with any
other inmate.

11.    **Transfer of Custody:**

In the event that the inmate is transferred to or from the custody of the USMS, BOP or any
other DF, the SAM provisions authorized for this inmate will continue in effect, without
need for any additional DOJ authorization.

12    **Inmate's Consular Contacts:**

The inmate, who is a foreign national, shall be allowed Consular communications and
visits, consistent with USMS/BOP/DF policy. The Consular contacts shall comply with
the U.S. Department of State (DOS) Consular notification and access requirements [10]

---

[10] See Consular Notification and Access, Instructions for Federal, State, and Local Law
Enforcement and Other Officials Regarding Foreign Nationals in the United States and the
Rights of Consular Officials to Assist Them, DOS. DOS contact: Consular Notification and
Outreach Division, Office of Policy Coordination and Public Affairs, DOS, telephone
(202) 736-7261 or http://travel.state.gov/consul_notify.html

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                    Page 16
Pursuant to 28 C.F.R. § 501.3
Inmate - Yousef

       Prior to permitting any Consular contact, the FBI will verify the Consular representative's credentials with the DOS.

# EXHIBIT B

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen  If attachments are needed, submit four copies. Additional instructions on reverse.*

From: YOUSEF RAMZI A          03911-000          H          ADX FLORENCE

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST**

Removal of the SAM restrictions.

The response given on the BP-8 is not satisfactory. ~~Because the restrictions imposed on me are not the basis of the original part of the particular design~~ I challenge the ongoing imposition and application of the SAM. I request to be relieved from the SAM. I have not received ~~a challenge~~ written notification of the basis for the SAM restriction ~~as required~~ as required under 28 CFR Section 501.3 (a). I challenge the imposition and application of the entire SAM in general, and I request to be relieved from each and every paragraph of the SAM separately. Since my arrest by U.S. authorities, I have not committed any act of violence or any act of terrorism.

July 22, 2010

DATE

*Ramzi Yousef*

SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED

JUL 27 2010

ADX Warden's Office

_____          _____
DATE          WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: 600140-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL          REG NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
DATE          RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN          ✪ PRINTED ON RECYCLED PAPER          BP–229(13)
APRIL 1982

**BP-229 RESPONSE**                                    **Case Number: 600140-F1**

Your Request for Administrative Remedy dated July 22, 2010, and received in this office July 27, 2010, has been reviewed. You allege you have not received written notification of the basis for your Special Administrative Measure (SAM) restrictions. You challenge the imposition and application of the SAM and request they be removed.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed your SAM is currently under review for renewal. You were given the opportunity to comment whether the SAM should be renewed and if so, request any modifications to the SAM. Your comments/requests will be forwarded for review to the North Central Regional Office, the Office of General Counsel, and then other divisions within the Department of Justice. Included with your comments will be information concerning your institutional adjustment and behavior.

Accordingly, your Request for Administrative Remedy is denied. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

Blake R. Davis, Warden                    10/6/10
                                          Date

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __YOUSEF RAMZI A__ __03911-000__ __H__ __ADX, Florence__
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**

In addition to challenging the ongoing imposition and application of the entire SAM in general, I further challenge ALL the restrictions which have deprived me from any and every right and privilege enjoyed by non-SAM inmates who are housed in a general population, open prison environment, including, but not limited to, the following: ① My right to be notified with notice and reasons for such restrictions before imposing them. ② To have meaningful process to challenge such restrictions at meaningful time. ③ My right to communicate and contact with non-immediate family members, including but not limited to, family relatives, friends, representatives of the International Red Cross, religious persons, clergies, from outside community, representatives

__August 02, 2010__                              __Ramzi Yousef__
DATE                                       SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED

AUG 09 2010

ADX Warden's Office

_____                    _____
DATE                                       WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                  CASE NUMBER: __602010-F1__

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL      REG NO.      UNIT      INSTITUTION

SUBJECT: _____

_____        ⊕        _____
DATE                    PRINTED ON RECYCLED PAPER    RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                                                     BP–229(13)
                                                           APRIL 1982

of the Iranian and Pakistani consulates in the US, media persons, representatives of the nonprofit organization Prisoner Visitation and Support, and legal entities and lawyers without signing an SAM affirmation, whether this was thru means of correspondence, phone calls, or visits, which I request to be contact visits. (4) My right to send and receive mail without delay in accordance with regular, non-SAM rules and policies of the BOP. (5) My right to write books and to engage in whatever communications with others may be necessary in order to be able to have such books published. (6) My right to communicate with and speak with SAM and non-SAM inmates. (7) My right to have visits, legal or otherwise, without being restrained with handcuffs or legirons during the visit. (8) My right to be out of segregation and be placed in open prison environment. (9) My right of having a process or a remedy which, if followed, would allow me to challenge and mitigate the reasons for which the SAM was imposed in the first place, and can result in lifting the SAM (10) Paragraph 2 of the SAM is unnecessary and is designed to intimidate attorneys to dissuade them from representing me. In Jan, 2007, Warden Wiley sent a letter to my attorney accusing her of attempt to circumvent the intent of my SAM. I believe this was an effort to intimidate her cuz she is representing me in challenging the conditions of my confinement and my SAM, and cuz everyone knows that an attorney named Lynne Stewart was prosecuted and convicted for violating her client's SAM. I ask that attorney be allowed to represent me without being subject to any restrictions in my SAM and without signing SAM affirmation. Also, paragraphs 2.d. and 2.g.ii.(3)(c) of my SAM, along with 2.h. which interferes with the legal work of any attorney representing me, are unconstitutionally vague and overbroad. I ask that they be removed. All the forgoing rights have been ceased to exist in violation of my 1st, 4th, 5th, 6th, and 8th Amendments to the U.S. Constitution. I ask those SAM restrictions be lifted and all other rights I didn't mention here be reinstated.

**BP-229 RESPONSE**                        **Case Number: 602010-F1**


Your Request for Administrative Remedy dated August 2, 2010, and received in this office August 9, 2010, has been reviewed. You state your Special Administrative Measures (SAM) were recently extended without a due process hearing, and that the SAM as applied to you denies you various constitutional rights.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed in accordance with Institution Supplement FLM 5321.07(3)E, H-Unit Programs, an annual review of your SAM and overall adjustment at this institution is conducted three months prior to the expiration of your SAM. During this review, recommendations are obtained from staff and you concerning the SAM. Additionally, staff review requests, grievances, and/or administrative remedies submitted by you throughout the year, disciplinary information from throughout the year, types of educational materials requested, types of leisure materials requested, and participation in the various programming offered by the institution. These factors, as well as your input, are forwarded through the North Central Regional Office to the Central Office in Washington, D.C., for review by the Federal Bureau of Prisons and other appropriate governmental agencies for approval. Your participation and input are actively sought during this process. Additionally, you are able to submit your request for modifications and/or the removal of your SAM through the Administrative Remedy process. Accordingly, there is no evidence to support your allegation your rights were violated. Furthermore, the SAM have been determined to be lawful; therefore, the provisions that apply to you are constitutional.

Accordingly, your Request for Administrative Remedy is denied. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.


_____               _10/18/10_____
Blake R. Davis, Warden                          Date

U.S. DEPARTMENT OF JUSTICE         **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **YOUSEF RAMZI A**      **03911-000**    **H**     **ADX FLORENCE**

      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A– INMATE REQUEST**

I request an immediate end to my solitary confinement and ask to be in a G.P. Unit in an open prison environment where inmates are allowed outside their cells for no less than 14 hours a day. I have been in solitary confinement in the U.S. since Feb 08, 1995, with no end in sight. I have never received any incident report since my arrest for any physical act of violence, whether against the staff, visitors, or other inmates, nor for possessing any type of weapon. I further ask not to be in handcuffs nor leg irons when moved outside my cell, nor during legal or nonlegal visits. I ask all my visits be contact visits, as was the case when I was at the MCC New York from Feb 08, 1995, until 1998 when I was moved to ADX.

August 09, 2010

    DATE                 *Ramzi Yousef*      SIGNATURE OF REQUESTER

**Part B– RESPONSE**

**RECEIVED**

AUG 17 2010

ADX Warden's Office

---

    DATE                             WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE             CASE NUMBER: **603081-F1**

                                            CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

         LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

    DATE            PRINTED ON RECYCLED PAPER         RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                                                   BP–229(13)
APRIL 1982

**BP-229 RESPONSE**                                   **Case Number:603081-F1**


Your Request for Administrative Remedy dated August 9, 2010, and received in this office August 17, 2010, has been reviewed. You request to be removed from solitary confinement, and not be placed in hand and leg restraints during movements. Additionally, you request to have contact visits.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed the United States Attorney General determined there is a substantial risk your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. As a result, pursuant to 28 C.F.R. § 501.3, a Special Administrative Measure (SAM) has been implemented in order to restrict your access to the mail, the media, the telephone, and visitors. Therefore, you are appropriately designated to the ADX and housed in the Special Security Unit to ensure your SAM is sufficiently monitored. You are not housed in solitary confinement. In conjunction with your SAM, you are not to have contact with anyone, therefore, you will not be permitted to have contact visits.

Escort procedures for the Special Security Unit are established and maintained by the Correctional Service Department. These procedures are reviewed annually to ensure they are in compliance with national guidelines. At this time, the escort procedures will not be modified to allow to you to be escorted unrestrained.

Accordingly, your Request for Administrative Remedy is denied. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.


Blake R. Davis, Warden                                 9/8/10
                                                       Date

U.S. Department of Justice                          **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen   If attachments are needed, submit four copies.   One copy of the completed BP-229(13) including any attachments must be submitted with this appeal

From: YOUSEF  RAMZI  A                03911-000          H          ADMAX
_____     _____     _____     _____
      LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

Part A - REASON FOR APPEAL    CASE No: 600140_F1

The response given does not address the separate elements of the complaint. Namely, why I have not received written notification of the basis for the SAM, and the reason for the ongoing imposition and application of the entire SAM in general, and each and every paragraph of the SAM separately. It also does not address the reason why th SAM, which was imposed on Nov 1996, is not removed. Since the response is not satisfactory, I reinstate my full, previous complaint of 7-22-2010, and consolidate it with this one.

Oct 14, 2010                                    Ramzi Yousef
_____                           _____
       DATE                                       SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
OCT 1 9 2010

BY:

_____                      _____
       DATE                                           REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel  Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response

ORIGINAL: RETURN TO INMATE                      CASE NUMBER: 600140-R1

**Part C - RECEIPT**

                                                CASE NUMBER: _____

Return to: _____
           LAST NAME  FIRST  MIDDLE INITIAL       REG NO        UNIT        INSTITUTION

SUBJECT: _____

_____                      _____
       DATE                                    SIGNATURE  RECIPIENT OF REGIONAL APPEAL

USP LVN          PRINTED ON RECYCLED PAPER                           BP-230(13)
                                                                    JUNE 2002

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

Regional Administrative Remedy Appeal
Part B - Response

**Administrative Remedy Number:**    600140-R1

This is in response to your Regional Administrative Remedy Appeal received in this office on October 18, 2010, in which you object to the Special Administrative Measures (SAMs) being imposed on you.   For relief, you request removal of your SAMs restrictions.

We have reviewed your appeal and the Warden's response dated October 6, 2010.   The United States Attorney General (USAG) may impose SAMs if there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. These SAMs ordinarily include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism.   While the Bureau of Prisons neither imposes nor rescinds SAMs, it implements the restrictions and can accommodate specific requests relating to the restrictions.   As the USAG has determined your particular SAMs are necessary, they will not be removed or modified at this time and will remain in effect until such time the USAG determines they are no longer warranted.   You have provided insufficient evidence to substantiate your allegations your rights have been violated in any way or staff have acted contrary to agency policy.   Accordingly, the institution's decision is supported.

Based on the above information, your Regional Administrative Remedy Appeal is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

10/27/10
Date

Michael K. Nalley, Regional Director

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen  If attachments are needed  submit four copies  One copy of the completed BP-229(13) including any attachments must be submitted with this appeal

From: __YOUSEF  RAMZI  A__    __03911-000__    __H__    __ADMAX__
        LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**

Case No: 602010-F1

I have been under the SAM since Nov-1996. Since then, I went through several periods, years at a time, as in the period between late 1997 and early 2002, in which I did not receive any incident report and followed all the recommendations of my Unit team and kept a record of good conduct. Yet, not only did the imposition of the SAM continue, and it was not even relaxed, but new restrictions were added to it year after year despite my ø clean records. Accordingly, the response given is not satisfacto not true, and not responsive. I reinstate my BP9-complaint here fully.

__Oct 21, 2010__    __Ramzi Yousef__
DATE               SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
OCT 2 5 2010
BY:_____

_____    _____
DATE                REGIONAL DIRECTOR

If dissatisfied with this response  you may appeal to the General Counsel  Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response

ORIGINAL: RETURN TO INMATE       CASE NUMBER: __602010-R1__

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL     REG NO.     UNIT     INSTITUTION

SUBJECT:_____

_____    _____
DATE           SIGNATURE  RECIPIENT OF REGIONAL APPEAL

USP LVN       PRINTED ON RECYCLED PAPER       BP-230(13)
                                        JUNE 2002

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number:**    602010-R1

This is in response to your Regional Administrative Remedy Appeal received in this office on October 25, 2010, in which you challenge Special Administrative Measures (SAMs) imposed on you as well as the renewal process.    For relief, you request removal of your SAMs restrictions.

We have reviewed your appeal and the Warden's response dated October 18, 2010.   We find this request to be repetitive of Administrative Remedy 600140-R1.   Accordingly, it will not be responded to again at this level.   In regard to the renewal process, prior to your renewal, you are afforded the opportunity to provide input into your SAMs and your input is forwarded to the appropriate authority for consideration.   Accordingly, the institution's decision is supported.

Based on the above information, your Regional Administrative Remedy Appeal is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

11/12/10
Date

Michael K. Nalley, Regional Director

U.S Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen  If attachments are needed  submit four copies  One copy each of the completed BP-229(13) and BP-230(13)  including any attachments must be submitted with this appeal

From: YOUSEF RAMZI A          03911-000     H      ADMAX, USP
LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**

CASE No. 600140-R1

I am dissatisfied with the response given because no specific reason was given as to why there is a substantial risk in my communications or contacts with others. Further, the response does not address all the elements of the complaint. Accordingly, I reinstate my previous complaints in this case and consolidate them with this one.

Nov 04, 2010
DATE

Ramzi Yousif
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

**RECEIVED**

NOV 1 0 2010

Administrative Remedy Section
Federal Bureau of Prisons

_____          _____
DATE                                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: 600140-A1

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL      REG NO        UNIT        INSTITUTION

SUBJECT: _____

_____                    _____
DATE                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN            ✪ PRINTED ON RECYCLED PAPER

BP-231(13)
JUNE 2002

**Administrative Remedy Number 600140-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal in which you allege you have not been notified of the
reasons the Special Administrative Measures (SAM) was initially
imposed and subsequently extended.  You further contend the
continued application of the SAM, initially imposed in August
1996 is unnecessary because you have not committed any acts of
violence or terrorism.  As relief, you request removal of the SAM
restrictions.

The SAM restrictions were implemented by the Warden upon
direction of the Attorney General.  The basis for implementation
of the SAM restrictions is the need to protect others against the
risk of death or serious bodily injury from terrorist acts.  Your
SAM was imposed on August 26, 1996, because the Attorney General
determined that there was a substantial risk that your
communications or contacts with others could result in death,
serious bodily injury or substantial damage to property that
would entail risk of death or serious bodily injury.  The SAM was
imposed to implement procedures and restrictions that are
reasonably necessary to protect against these risks.  You
received a notification of th restrictions and the basis for the
restrictions while you were housed at MCC New York, in accordance
with 28 CFR 501.3(b).  Each time the SAM was extended, you
received another notification as well.

We remind you the Bureau's role in such matters is to inform you
of the SAM restrictions and ensure the measures are followed.
The Attorney General has the ultimate authority to impose the
restrictions.  Any specific concerns you have regarding your SAM
can be addressed by the institution.  If they need to discuss an
issue with non-BOP entities, they will.  Modifications may be
made to specific portions of the SAM, as deemed appropriate.
Please continue to address your concerns to the ADX staff.  The
SAM will remain in place until they are deemed no longer
necessary by the Attorney General.

Your appeal is denied.

_____                _____
February 23, 2011                       Harrell Watts, Administrator
Date                                    National Inmate Appeals

# EXHIBIT C

Case 1:93-cr-00180-LAK    Document 841-2    Filed 06/17/11    Page 33 of 44

A **Cryptome DVD** is offered by Cryptome. Donate $25 for a DVD of the Cryptome 10+-years archives of 39,000 files from June 1996 to December 2006 (~4.1 GB). Click Paypal or mail check/MO made out to John Young, 251 West 89th Street, New York, NY 10024. Archives include all files of cryptome.org, cryptome2.org, jya.com, cartome.org, eyeball-series.org and iraq-kill-maim.org. Cryptome offers with the Cryptome DVD an INSCOM DVD of about 18,000 pages of counter-intelligence dossiers declassified by the US Army Information and Security Command, dating from 1945 to 1985. No additional contribution required -- $25 for both. The DVDs will be sent anywhere worldwide without extra cost.

---

5 April 2007

---

```
[Federal Register: April 4, 2007 (Volume 72, Number 64)]
[Rules and Regulations]
[Page 16271-16275]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr04ap07-8]


=======================================================================
-----------------------------------------------------------------------


DEPARTMENT OF JUSTICE

Bureau of Prisons

28 CFR Parts 500 and 501

[BOP-1116; AG Order No. 2878-2007]
RIN 1120-AB08


National Security; Prevention of Acts of Violence and Terrorism

AGENCY: Bureau of Prisons, Department of Justice.

ACTION: Final rule.

-----------------------------------------------------------------------

SUMMARY: This rule finalizes the interim rules on Special
Administrative Measures that were published on October 31, 2001 (66 FR
55062). The previously existing regulations authorized the Bureau of
Prisons (Bureau), at the direction of the Attorney General, to impose
special administrative measures with respect to specified inmates,
based on information provided by senior intelligence or law enforcement
officials, if determined necessary to prevent the dissemination of
either classified information that could endanger the national
security, or of other information that could lead to acts of violence
and/or terrorism. The interim rule extended the period of time for
which such special administrative measures may be imposed from 120 days
to up to one year, and modified the standards for approving extensions
of such special administrative measures. In addition, where the
Attorney General has certified that reasonable suspicion exists to
believe that an inmate may use communications with attorneys (or agents
traditionally covered by the attorney-client privilege) to further or
facilitate acts of violence and/or terrorism, the interim rule amended
the previously existing regulations to provide that the Bureau must
```

provide appropriate procedures to monitor or review such communications
to deter such acts, subject to specific procedural safeguards, to the
extent permitted under the Constitution and laws of the United States.
The interim rule also requires the Director of the Bureau of Prisons to
give written notice to the inmate and attorneys and/or agents before
monitoring or reviewing any communications as described in this rule.
The interim rule also provided that the head of each component of the
Department of Justice that has custody of persons for whom special
administrative measures are determined to be necessary may exercise the
same authority to impose such measures as the Director of the Bureau of
Prisons.

DATES: Effective date: June 4, 2007.

ADDRESSES: Rules Unit, Office of the General Counsel, Bureau of
Prisons, 320 First Street, NW., Washington, DC 20534.

FOR FURTHER INFORMATION CONTACT: Sarah Qureshi, Office of the General
Counsel, Bureau of Prisons, (202) 307-2105.

SUPPLEMENTARY INFORMATION: This rule finalizes interim rules on Special
Administrative Measures that were published on October 31, 2001 (66 FR
55062) These rules are codified at 28 CFR 501.2 (national security)
and 501.3 (violence and terrorism). We received approximately 5000
comments in opposition to the rule, which we discuss below.

Section 501.2

    Section 501.2 authorizes the Director of the Bureau, at the
direction of the Attorney General, to impose special administrative
measures with respect to a particular inmate that are reasonably
necessary to prevent disclosure of classified information. These
procedures may be implemented after written certification by the head
of a United States intelligence agency that the unauthorized disclosure
of such information would pose a threat to the national security and
that there is a danger that the inmate will disclose such information.
These special administrative measures ordinarily may include housing
the inmate in special housing units and/or limiting certain privileges,
including, but not limited to,

[[Page 16272]]

correspondence, visiting, interviews with representatives of the news
media, and use of the telephone, as is reasonably necessary to prevent
the disclosure of classified information.
    The interim rule made no change in the substantive standards for
the imposition of special administrative measures, but changed the
initial period of time under Sec 501.2 from a fixed 120-day period to
a period of time designated by the Director, up to one year. The rule
also allows the Director to extend the period for the special
administrative measures for additional one-year periods, based on
subsequent certifications from the head of an intelligence agency that
there is a danger that the inmate will disclose classified information
and that the unauthorized disclosure of such information would pose a
threat to national security. In addition, this rule provides that the
subsequent certifications by the head of an intelligence agency may be
based on the information available to the intelligence agency.

Section 501 3

Section 501.3 also authorizes the Director of the Bureau, on
direction of the Attorney General, to impose similar special
administrative measures (with respect to a particular inmate) that are
reasonably necessary to protect persons against the risk of death or
serious bodily injury. These procedures may be implemented after
written notification from the Attorney General or, at the Attorney
General's discretion, from the head of a Federal law enforcement or
intelligence agency, that there is a substantial risk that an inmate's
communications or contacts with other persons could result in death or
serious bodily injury to persons, or substantial damage to property
that would entail the risk of death or serious bodily injury to
persons.

The interim rule made no change in the substantive standards for
the implementation of special administrative measures under Sec.
501.3(a). However, the interim rule allows the Director, with the
approval of the Attorney General, to impose special administrative
measures for a longer period of time, not to exceed one year, in cases
involving acts of violence and/or terrorism. In addition, the rule
provides authority for the Director to extend the period for the
special administrative measures for additional periods, up to one year,
after receipt of additional notification from the Attorney General or,
at the Attorney General's discretion, from the head of a Federal law
enforcement or intelligence agency.

The interim rule also modified the standard for approving
extensions of the special administrative measures. The rule provides
that the subsequent notifications by the Attorney General, or the head
of the Federal law enforcement or intelligence agency should focus on
the key factual determination--that is, whether the special
administrative measures continue to be reasonably necessary, at the
time of each determination, because there is a substantial risk that an
inmate's communications or contacts with persons could result in death
or serious bodily injury to persons, or substantial damage to property
that would entail the risk of death or serious bodily injury to
persons.

Where the Attorney General, or the head of a Federal law
enforcement or intelligence agency, initially made such a
determination, then the determination made at each subsequent review
should not require a de novo review, but only a determination that
there is a continuing need for the imposition of special administrative
measures in light of the circumstances.

In either case, the affected inmate may seek review of any special
administrative measures imposed pursuant to Sec. Sec. 501.2 or 501.3
in accordance with paragraph (a) of this section through the
Administrative Remedy Program, 28 CFR part 542.

Justification for Special Administrative Measures Rules

Although this rule does not alter the substantive standards for the
initial imposition of special administrative measures under Sec. Sec.
501.2 and 501.3, the Bureau's final rule implementing this section in
1997 devoted a substantial portion of the supplementary information
accompanying the rule to a discussion of the relevant legal issues. 62
FR 33730-31. As the U.S. Supreme Court noted in Pell v. Procunier, 417
U.S. 817, 822-23 (1974), ``a prison inmate retains those First
Amendment rights that are not inconsistent with his status as an inmate
or with the legitimate penological objectives of the corrections

system. * * * An important function of the corrections system is the deterrence of crime. * * * Finally, central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.'' (Emphasis added.)

This regulation, with its concern for security and protection of the public, clearly meets this test. The changes made by this rule regarding the length of time and the standards for extension of periods of special administrative measures do not alter the fundamental basis of the rules that were adopted in 1997. Instead, they more clearly focus the provisions for extensions--both the duration of time and the standards--on the continuing need for restrictions on a particular inmate's ability to communicate with others within or outside the detention facility in order to avoid threats to national security or risks of terrorism and/or violence.

In every case, the decisions made with respect to a particular inmate will reflect a consideration of the issues at the highest levels of the law enforcement and intelligence communities. Where the issue is protection of national security or prevention of acts of violence and/or terrorism, it is appropriate for government officials, at the highest level and acting on the basis of their available law enforcement and intelligence information, to impose restrictions on an inmate's public contacts that may cause or facilitate such acts.

Comments

We received approximately 5000 comments in opposition to the rule. All but 44 comments were variations of two form letters. We also received one comment in support of the rule. Other than the single supporting comment, all comments expressed identical and/or overlapping themes. We discuss the comments and our responses below.

Monitoring of Attorney-Client Communications

Comment: The provision allowing monitoring of attorney-client communications breaches attorney-client privilege and deprives inmates of the right to effective assistance of counsel under the Sixth Amendment.

Response: We acknowledge that the Sixth Amendment limits the government's ability to monitor conversations between a detainee and his or her attorney. Nonetheless, as we noted in the preamble to the interim rule, the fact of monitoring by itself does not violate the Sixth Amendment right to effective assistance of counsel. Weatherford v. Bursey, 429 U.S. 545 (1977). Rather, the propriety of monitoring turns on a number of factors, including the purpose for which the government undertakes the monitoring, the protections afforded to privileged communications, and the extent to which, if at all, the monitoring results in information being communicated to prosecutors and used at trial against the detainee.

[[Page 16273]]

In Weatherford, a government informant was present at two meetings between a defendant, Bursey, and his attorney during which Bursey and the attorney discussed preparations for Bursey's criminal trial. To preserve his usefulness as an undercover agent, the informant could not reveal that he was working for the government and thus sat through the meetings and heard discussions pertaining to Bursey's defense. Bursey later brought a suit under 42 U.S.C. 1983, claiming that his Sixth

Amendment right had been violated. The court of appeals found for Bursey, holding that the informant's presence during the attorney-client meetings necessarily violated Bursey's Sixth Amendment right. The Supreme Court reversed, explaining that

[t]he exact contours of the Court of Appeals' per se right-to-counsel rule are difficult to discern; but as the Court of Appeals applied the rule in this case, it would appear that if an undercover agent meets with a criminal defendant who is awaiting trial and with his attorney and if the forthcoming trial is discussed without the agent's revealing his identity, a violation of the defendant's constitutional rights has occurred, whatever was the purpose of the agent in attending the meeting, whether or not he reported on the meeting to his superiors, and whether or not any specific prejudice to the defendant's preparation for or conduct of the trial is demonstrated or otherwise threatened.
Weatherford, 429 U.S. at 550.

The Supreme Court expressly rejected such a per se rule and denied that having a government agent hear attorney-client communications results, without more, in an automatic violation of Sixth Amendment rights. Instead, the Court noted that it was significant that the government had acted not with the purpose of learning Bursey's defense strategy, but rather with the legitimate law enforcement purpose of protecting its informant's usefulness. Id. at 557. The Court further explained that ``unless [the informant] communicated the substance of the Bursey-Wise conversations and thereby created at least a realistic possibility of injury to Bursey or benefit to the State, there can be no Sixth Amendment violation.'' Id. at 557-58.
    Thus, the Court indicated that the Sixth Amendment analysis requires considering the government's purpose in overhearing attorney-client consultations and whether any information from overheard consultations was communicated to the prosecution in a manner that prejudiced the defendant
    Weatherford supports the concept that when the government possesses a legitimate law enforcement interest in monitoring detainee-attorney conversations, no Sixth Amendment violation occurs so long as privileged communications are protected from disclosure and no information recovered through monitoring is used by the government in a way that deprives a defendant of a fair trial. This rule adheres to these standards by permitting monitoring only when the Attorney General certifies that reasonable suspicion exists to believe that a particular detainee may use communications with attorneys or their agents to further or facilitate acts of terrorism, and by establishing a strict firewall to ensure that attorney-client communications are not revealed to prosecutors.
    Of course, if the government detects communications intended to further acts of terrorism (or other illegal acts), those communications do not fall within the scope of the attorney-client privilege. That privilege affords no protection for communications that further ongoing or contemplated illegal acts, including acts of terrorism. See, e.g., Clark v. United States, 289 U.S. 1, 15 (1933) (such a client ``will have no help from the law''). The crime-fraud exception applies even if the attorney is unaware that his professional services are being sought in furtherance of an illegal purpose, see, e.g., United States v. Soudan, 812 F.2d 920, 927 (5th Cir. 1986), and even if the attorney takes no action to assist the client, see, e.g., In re Grand Jury Proceedings, 87 F.3d 377, 382 (9th Cir. 1996). A detainee's efforts to

use his or her lawyer to plan acts of terrorism simply are not protected by the attorney-client privilege.

This rule carefully and conscientiously balances an inmate's right to effective assistance of counsel against the government's responsibility to thwart future acts of violence and/or terrorism perpetrated with the participation or direction of Federal inmates. In those cases where the government has substantial reason to believe that an inmate may use communications with attorneys or their agents to further or facilitate acts of violence and/or terrorism, the government has a responsibility to take reasonable and lawful precautions to safeguard the public from those acts.

Comment: The monitoring provision of the rule violates the First Amendment right to petition the government, which includes the right to access courts. The commenter argued that the right to access courts involves consulting lawyers in confidence, which, according to the commenters, is infringed upon by this rule. Some commenters also argued that the provision likewise violates the Fifth Amendment by circumventing due process, which requires access to courts to ``challenge unlawful convictions and to seek redress for violations'' of constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974).

Response: For the reasons set forth above in our discussion of the monitoring provision and attorney-client privilege, we disagree that the rule infringes upon inmates' rights to consult lawyers in confidence. Inmates retain the same ability to access courts and consult lawyers as they had before the date of the Special Administrative Measures interim rule. We therefore do not change the rule based on these comments.

Further, no due process rights are infringed. An inmate whose conversations with his/her attorney are monitored will enjoy strict procedural protections. First, the inmate and attorney will be notified that their communications are being monitored (Sec. 501.3(d)(2)). Second, a ``privilege team'' will conduct the monitoring and will be separated by a firewall from the personnel responsible for prosecuting the inmate (Sec. 501.3 (d)(3)). Third, the privilege team may disclose information only with the prior approval of a Federal judge or where acts of violence and/or terrorism are imminent (Sec. 501.3(d)(3)). The rule carefully balances inmates' need to communicate with their attorneys against the United States' need to prevent future acts of violence and/or terrorism.

Comment: The monitoring provision in the rule violates the Fourth Amendment and Federal wiretapping statutes (18 U.S.C. 2510-2522). Commenters posited that before the government can intercept oral communications, it must demonstrate to a Federal judge probable cause to believe both that a particular individual is committing a crime, and that the individual will be communicating about that crime. 18 U.S.C. 2518(3).

Response: Title 18, Sec. 2518(7) of the United States Code allows an exception to the court order requirement upon the Attorney General's designee's determination that an emergency situation exists that involves immediate danger of death or serious physical injury to any person, or conspiratorial activities threatening the national security interest. Section 2518(7), (a)(i) and (a)(ii). Therefore, if the Attorney General so authorizes, and if, according to Sec. 2518(7)(b), there are grounds upon which a court order could reasonably have been granted to allow interception of communications, privilege teams as authorized by the Attorney General may monitor attorney-client communications as provided for in this rule.

[[Page 16274]]

We note that only persons held under SAM restrictions for acts of violence or terrorism, where lives are directly at risk, may potentially be subjected to monitoring of their attorney-client conversations. Even then, such attorney-client monitoring will be resorted to only after the Attorney General has made a specific determination that it is likely that attorney-client communications will be used to convey improper messages to or from the SAM restrictee. Since the effective date of the interim rule on October 30, 2001, this provision has been invoked only once, after the government obtained specific evidence revealing that the attorney had previously misused the attorney-client privilege in order to convey improper messages to and from her client. In other words, the Attorney General determined that the situation involved ``immediate danger of death or serious physical injury to any person, or conspiratorial activities threatening the national security interest,'' under 18 U.S.C. 2518(7).

As has been recognized by the United States Supreme Court (see our response to the comment above, regarding the Sixth Amendment), the Sixth Amendment does not protect an attorney's communications with a client that are made to further the client's ongoing or contemplated criminal acts. Such communications do not assist in the preparation of a client's defense, and, therefore, are not legally privileged.

Still, before such a SAM restriction may be imposed, the Attorney General must make a specific determination that attorney-client communications will be used to circumvent the purpose of the SAM, that is, to pass information that might reasonably lead to acts of violence or terrorism resulting in death or serious bodily injury, or cause property damage that would lead to the infliction of death or serious bodily injury. Even when attorney-client communications are to be monitored for the purposes of the SAM, these communications remain subject to the attorney-client privilege to the extent recognized under applicable law.

Comment: The monitoring provision is too broad in that it applies unjustly to pretrial inmates, immigration violators, witnesses, and others in Federal (both Bureau of Prisons and non-Bureau) custody.

Response: Before this rulemaking, Sec. Sec. 501.2 and 501.3 covered only inmates in Bureau of Prisons custody. However, there are instances when a person is held in the custody of other officials of the Department of Justice (for example, the Director of the United States Marshals Service). To ensure consistent application of these provisions relating to special administrative measures in those circumstances where such restrictions are necessary, this rule clarifies that the appropriate officials of the Department of Justice having custody of persons for whom special administrative measures are required may exercise the same authorities as the Director of the Bureau of Prisons and the Warden. In such cases, the persons upon whom the special administrative measures are imposed must fall within the regulatory definition of ``inmate'' at Sec. 500.1.

Previously, the interim rule identified, as an example of an official of the Department of Justice who could exercise the same authorities as the Director of the Bureau of Prisons and the Warden, the Commissioner of the Immigration and Naturalization Service (INS). See 66 FR 55064 (Applicability to All Persons in Custody Under the Authority of the Attorney General). On March 1, 2003, however, the INS ceased to exist, and its functions were transferred to the Department of Homeland Security (DHS) pursuant to the Homeland Security Act of

2002 (HSA), Pub. L. No. 107-296, 116 Stat. 2135. Section 441 of the HSA transferred to DHS all functions of the detention and removal program previously under the INS Commissioner. The Secretary of Homeland Security, via Delegation No. 7030, delegated all the authority vested in section 441 of the HSA to the Immigration and Customs Enforcement (ICE), a component of DHS. Accordingly, the detention authority previously exercised by the INS Commissioner now rests with ICE. Given that ICE detainees may be housed in Bureau facilities or Bureau contract facilities, this rule would apply to those inmates.

Inmates convicted of Federal crimes, and many others in custody at Bureau facilities or Bureau contract facilities, such as pretrial inmates, witnesses, and immigration violators, have equal potential to attempt to perpetrate acts of violence and/or terrorism and/or acts that threaten national security. As discussed above and in the preamble to the interim rule (66 FR 55062), neither the special administrative measures previously authorized by this rule nor the monitoring provision currently authorized by this rule will be imposed arbitrarily. The Attorney General will carefully and systematically review each case and the potential threats before imposing special administrative measures or monitoring attorney-client communications.

Regarding ``Vagueness'' of the Rule

According to the commenters, the rule fails to
1. Detail the Administrative Remedies available if inmates oppose Special Administrative Measures (SAM). The Administrative Remedies available, which are the same for any issue an inmate wishes to pursue with the Bureau, are discussed in 28 CFR part 542.
2. Detail SAM conditions (how long confined to cell, program participation, exercise, recreation, training, association with other inmates). We do not detail SAM conditions in this rule because each case varies with the particular security needs of the inmate in question.
3. Define the ``substantial standards'' for imposing SAM.
4. Define what constitutes ``reasonable suspicion'' of terrorist activity which will prompt the Attorney General to monitor attorney-client communications.
For items 3 and 4, as we note above, we do not detail ``substantial standards'' or what will prompt monitoring of attorney-client communications because each case varies with the particular security concerns raised by each situation. In general, however, the Attorney General will determine that SAMs are necessary in light of clear evidence that communication or contact with members of the public could result in death or serious bodily injury or damage to property, as stated in the rule. Generally, this will be shown through prior acts of violence or terrorism and evidence of a continuing threat due to contacts with members of the public who may contribute to or undertake acts of violence or terrorism
5. Define ``acts of violence or terrorism.''
The United States Code, Title 18, 2332b, describes ``[a]cts of terrorism transcending national boundaries.'' In particular, the ``Federal crime of terrorism'' is defined at length in subsection (g)(5). As such, we need not reiterate that definition in the rule text.

Regulatory Certifications

The Department has determined that this rule is a significant

regulatory action for the purpose of Executive Order 12866, and
accordingly this rule has been reviewed by the Office of Management and
Budget.
    The Department certifies, for the purpose of the Regulatory
Flexibility Act (5 U.S.C. 601 et seq.), that this rule will not have a
significant economic impact on a substantial number of small entities
within the meaning of the Act.

[[Page 16275]]

Because this rule pertains to the management of offenders committed to
the custody of the Department of Justice, its economic impact is
limited to the use of appropriated funds.
    This rule will not have substantial direct effects on the states,
the relationship between the national government and the states, or the
distribution of power and responsibilities among the various levels of
government. Therefore, in accordance with Executive Order 13132, it is
determined that this rule does not have sufficient federalism
implications to warrant the preparation of a Federalism Assessment.

List of Subjects in 28 CFR Parts 500 and 501

    Prisoners.

0
Accordingly, under rulemaking authority vested in the Attorney General
in 5 U.S.C. 552(a), we adopt as final the interim rule published on
October 31, 2001, at 66 FR 55062, without change.

    Dated: March 29, 2007.
Alberto R. Gonzales,
Attorney General.
  [FR Doc. E7-6265 Filed 4-3-07; 8:45 am]

BILLING CODE 4410-05-P

# EXHIBIT D



**Office of the Attorney General**
Washington, D.C. 20530

August 6, 1999

LAW ENFORCEMENT SENSITIVE

MEMORANDUM FOR KATHLEEN HAWK SAWYER
DIRECTOR
FEDERAL BUREAU OF PRISONS

FROM:        THE ATTORNEY GENERAL

SUBJECT:     Extension of Special Administrative
             Measures Pursuant to 28 C.F.R. § 501.3(c)
             for Federal Bureau of Prisons Inmate
             Ramzi Ahmed Yousef

In an August 26, 1996, memorandum, you were directed to
implement Special Administrative Measures (SAM) pursuant to
28 C.F.R. § 501.3 to protect persons against the substantial risk
of death and serious bodily injury from terrorist acts caused by
Ramzi Ahmed Yousef (Yousef), who is currently confined at the
Federal Bureau of Prisons' (BOP) United States Penitentiary,
Administrative Maximum, Florence, Colorado.

Yousef was convicted of various terrorist acts, including
participation in a seditious conspiracy which carried out the
bombing of the World Trade Center in New York City.

Because I had been informed of Yousef's proclivity for
terrorism, I signed a memorandum dated August 26, 1996, in which
you were directed, pursuant to 28 C.F.R. § 501.3, to implement
SAM to restrict Yousef's access to the mail, the media, the
telephone, and visitors. This SAM was extended in December 1996,
March, August, and December 1997, April, August, and
December 1998, and April 1999.

As detailed in prior SAM memoranda, Yousef has personally
carried out, and has had others carry out, sophisticated and
deadly terrorist attacks. The substantial risks posed by Yousef
as set forth in the prior SAM memoranda continue to exist.
Therefore, based upon information provided to me, I find that
there is a substantial risk that Yousef's communications or
contacts with persons could result in death or serious bodily

LAW ENFORCEMENT SENSITIVE

LAW ENFORCEMENT SENSITIVE

Memorandum for Kathleen Hawk Sawyer                                    Page 2
Subject:   Extension of Special Administrative Measures
           Pursuant to 28 C.F.R. § 501.3(c) for Federal
           Bureau of Prisons Inmate Ramzi Ahmed Yousef


injury to persons, or substantial damage to property that would
entail the risk of death or serious bodily injury to persons.
Therefore, I am directing you, pursuant to 28 C.F.R. § 501.3(c),
to extend SAM on Yousef in order to restrict Yousef's access to
the mail, the media, the telephone, and visitors.  The SAM dated
April 5, 1999, will be in effect for an additional 120 days, from
the date of this directive, subject to my further direction.

**SAM CONTACT INFORMATION**

     Any questions that you or your staff may have about this
memorandum or the SAM directed herein should be directed to
Michael A. Brave, Chief, Intelligence and Investigative
Operations Unit, Office of Enforcement Operations, Criminal
Division, U.S. Department of Justice.  He can be contacted at
Post Office Box 7600, Washington, DC, 20044-7600; telephone -
(202) 514-3684; and facsimile - (202) 514-3120.

LAW ENFORCEMENT SENSITIVE